A. F. MEYER MANUFACTURING COMPANY, Appellee, v. IOWA VALLEY SUGAR COMPANY, Appellant.

**COMPOSITION WITH CREDITORS:** Operation and Effect—Estoppel. A creditor who, with all other creditors of a common debtor, assigns his claim to a creditors' committee, with unrevoked authority to deal with the claim as it might deem fit, is bound by a composition agreement entered into with the debtor, even though he never *formally* agreed thereto; and especially is this true when the debtor and all other creditors had acted on such agreement and materially changed their position by reason thereof.

Headnote 1:   12 C. J. p. 258 (Anno.)

*Appeal from Wright District Court.*—E. M. McCALL, Judge.

MARCH 17, 1925.

SUIT upon a promissory note. An affirmative defense was pleaded, to the effect that the note in suit had been supplanted and satisfied by a composition agreement of creditors, entered into with the defendant as an insolvent debtor. By agreement of parties, the cause was transferred to the equity side, and so tried. There was a judgment for the plaintiff on the note. The defendant appeals.—*Reversed.*

*Birdsall, McGrath & Archerd,* for appellant.

*J. M. Jensen,* for appellee.

EVANS, J.—The question in the case is whether the plaintiff became bound by a composition agreement, entered into by a creditors' committee with the defendant company. The defendant, as a corporation, was in financial distress. Its property was subject, in the first instance, to secured claims in favor of the Dyer Construction Company, amounting to $488,000 plus. It owed unsecured claims for $367,000. It was unable to meet its current obligations as they fell due. A meeting of its general creditors was called, which met April 22, 1921. The plaintiff was represented at such meeting. A creditors' committee was

appointed at that time, which purported thereafter to represent all the consenting creditors, amounting to about 85 per cent of the indebtedness. Each of these creditors caused to be executed and delivered to the creditors' committee an absolute assignment of his claim. Each assignment contained the following proviso:

"In respect of all claims assigned to the committee, said committee shall have full power and authority to deal therewith in such manner as it shall see fit."

Such an instrument was delivered by the plaintiff. At this meeting of the stockholders, a plan was discussed with the officials of the defendant, which contemplated a payment of 50 per cent in cash and an extension of time for the remainder. Later negotiations by the creditors' committee disclosed that the defendant would not be able to carry through such plan. On July 22, 1921, another plan, known in the record as "No. 3," was formulated by the creditors' committee, and agreed to by the defendant. Though formulated by the committee, it was agreed to by it only tentatively at that time. This plan provided for a cash payment of all claims of $100 or less. For all other indebtedness, scrip and bonds were to be issued by the defendant-company, to bear 8 per cent semiannual interest and to run for five years. The creditors' committee immediately notified by letter all the creditors which it represented, including this plaintiff, of the new proposal under their consideration. Such letter of notification contained the following:

"The plan herein proposed will be effective if and when consents have been received from creditors in an amount sufficient in the judgment of the committee to warrant the committee in declaring the plan effective."

With this letter was inclosed to each creditor a blank form of express consent to the proposal. The plaintiff never executed such express consent. Neither did it reject the proposal nor make any objection thereto. In September, the plaintiff was advised by the creditors' committee that claims amounting to $322,000 had expressly consented to the new proposal. The plaintiff made no response to this information. In October, the creditors' committee addressed a letter to all such creditors, including plaintiff, with full information as to the state of negotiations, which included the following:

"The creditors' committee has determined that consents have been received from the creditors in an amount sufficient, in the judgment of the committee, to warrant the committee in declaring the plan effective and it has been declared effective."

The plaintiff made no response to this letter, nor did it, at any time until January, 1922, express any disapproval of the proposed action of the creditors' committee.

Pursuant to its notification of October 21, 1921, the creditors' committee fully accepted the plan thus outlined, and required the defendant to call a stockholders' meeting for ratification of the same and for full performance thereof on the part of the defendant. Such stockholders' meeting was called, and the plan was ratified. All its requirements were complied with by the defendant. One of these requirements was that a mortgage be executed upon the property of the defendant, to secure the bonds and scrip. Considerable expense, amounting to more than $3,000, was incurred by the defendant in complying with the requirements agreed upon. It paid the claims of small creditors; it paid the expenses of carrying out the composition agreement. It has paid all the semiannual installments of interest falling due up to the time of the trial, which was had in 1923.

The creditors' committee acted in absolute good faith, and strictly within the authority conferred upon it by the plaintiff in its assignment of its claim. Such action by the committee has the approval of every creditor except the plaintiff.

The point urged by the appellee-plaintiff is that it delivered its assignment solely for the purpose of carrying out the proposed agreement of April 22, 1921; and that it never assented to the agreement of July 22, 1921, which was finally made effective by the committee.

The plaintiff's witness Getz was the representative of the plaintiff at the creditors' meeting on April 22, 1921. He testified, in effect, that the proposition made April 22, 1921, was tentative; that he agreed to the same if it could be carried out; that his company subsequently executed the assignment, including the authorization hereinbefore set forth. He did not testify that the assignment was delivered solely for the purpose of carrying out the agreement of April 22, 1921. The point made in argument for the appellee is not predicated upon the testi-

mony of this sole witness. It is, in fact, predicated upon certain letter or letters written by the creditors' committee to the plaintiff-company, urgently requesting their formal consent to the plan of July 22, 1921. Such request by the committee was stimulated by the fact that the plaintiff had not sent to the committee its formal consent. The argument naturally is that such request implied an admission on the part of the committee that such formal consent was requisite, in order to bind the plaintiff to the agreement. This was doubtless the feature of the case which influenced the trial judge in entering the decree below.

If the question were one of right, as between the plaintiff and the creditors' committee alone, much stress might fairly be laid upon the implications of such a request. But as against this defendant, and as against the other creditors who entered the same composition agreement, such request made by the committee to the plaintiff has no legal effect favorable to the plaintiff. It was a communication between the principal and its own agent. The authority conferred by the plaintiff upon the creditors' committee was absolute. It was essential to the success of the undertaking that it should be so. It was identical in form with that signed by every other consenting creditor. Every one of such creditors had a right to rely upon the authority thus conferred upon the committee. The defendant had the same right to rely thereon. Whether such authority was revocable at all by the plaintiff is a question we need not consider. The plaintiff did not purport to revoke it at any time until after it had been fully exercised, and until January, 1922. The fact that the creditors' committee importuned the express consent of the plaintiff was indicative of its good faith and of its commendable desire to have the advance approval of every consenting creditor before it took the responsibility of rendering effective the final agreement of July 22, 1921.

The defendant has pleaded an estoppel against the plaintiff, in that it failed to make objection to the course adopted by the creditors' committee, while knowing that other creditors and the defendant were all acting thereon. We are of the opinion that the plea of estoppel is good, and is sustained by the evidence. We are also of the opinion that such plea is not essential to the defendant's defense. We deem it clear that the

authority conferred upon the creditors' committee was without reservation, and that it was never revoked. It was, therefore, binding upon the plaintiff. Its counsel concedes that a composition agreement is binding upon all creditors who enter into it, and that it is not wanting in consideration. We think that every element of a valid composition agreement is present in this case.

The judgment entered below must, accordingly, be reversed. The plaintiff's petition will be dismissed.—*Judgment reversed and petition dismissed.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.